# United States District Court
# For The Western District of North Carolina
# Charlotte Division

James Denard Sarratt,

        Plaintiff(s),                JUDGMENT IN A CIVIL CASE

vs.                                    3:02-CV-219-2/3:01-CR-8 & 3:01CR137

USA ,

        Defendant(s).

DECISION BY COURT. This action having come before the Court by motion and a decision having been rendered;

IT IS ORDERED AND ADJUDGED that Judgment is hereby entered in accordance with the Court's 5/20/05 Order.

May 20, 2005

FRANK G. JOHNS, CLERK

BY: *Betsy Wallace*
Betsy Wallace, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:02CV219-02-MU
(3:01CR8 and 3:01CR137-MU)

| | |
|---|---|
| JAMES DENARD SARRATT,<br>　　Petitioner,<br><br>　　　　v.<br><br>UNITED STATES OF AMERICA,<br>　　Respondent. | O R D E R |

**THIS MATTER** is before this Court upon petitioner's Motion To Vacate, Set Aside, Or Correct Sentence under 28 U.S.C. §2255, filed on June 6, 2002; on the "Government's Response To Defendant's Motion To Vacate . . . ," construed as a motion for summary judgment, filed October 21, 2002; and on the petitioner's "Request For Summary Judgment In Opposition Of The Government's Response . . . ," filed November 25, 2002. For the reasons set forth herein, and for the further reasons set forth in the government's motion, the government's motion for summary judgment will be <u>granted</u>; the petitioner's Request for Summary Judgment will be <u>denied</u>; and the petitioner's Motion to Vacate will be <u>dismissed</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this Motion, the record reflects that on January 9, 2001, the petitioner was named in a two-count Bill of

Indictment which charged him with bank robbery, in violation of 18 U.S.C. §2113(a) (Count One, case 3:01CR8) and bank larceny, in violation of 18 U.S.C. §2113(b) (Count Two, same case). Thereafter, following extensive negotiations between counsel for the government and defense counsel, the government opted not to indict the petitioner on additional bank robbery charges. Instead, on July 12, 2001, the government filed a Bill of Information, charging the petitioner with one count of felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) (case 3:01CR137).[1]

Also on July 12, 2001, the petitioner entered into a written Plea Agreement with the government, whereby he agreed to plead guilty to the bank larceny charge set forth in case 3:01CR8 and to the firearm charge set forth in case 3:01CR137. In exchange for the petitioner's guilty pleas, the government agreed to dismiss the bank robbery charge from Count One.

According to the terms of the Plea Agreement, the petitioner was advised that the statutory maximum term for each individual offense was ten years; that his sentence would be imposed in conformity with the U.S. Sentencing Guidelines; and that notwithstanding any recommendations in the Agreement as to the offense level, "if the Probation Office determine[d] from the [petitioner's] criminal history that . . . §4B1.4 (Armed Career

---

[1] This firearm charge was not related to the petitioner's two pending bank-related charges. Rather, this charge stemmed from an arrest which the petitioner sustained on an occasion when he was found in possession of drugs and a .357 caliber handgun.

2

Criminal) or a statutory minimum sentence applies, then that provision [was to] be used in determining the sentence."

After filing his Plea Agreement, the petitioner appeared before the Court for his Plea & Rule 11 Hearing. At that time, the Court placed the petitioner under oath, reviewed the charges and penalties with him, and then engaged him in its standard, lengthy plea colloquy.

During that colloquy, the petitioner swore, inter alia: (1) that he had fully reviewed his Plea Agreement with his attorney; (2) that he understood that he was facing maximum terms of ten years imprisonment for each conviction; (3) that he understood that the Court would not be able to determine his sentence until after his Pre-sentence Report had been prepared; (4) that he understood, pursuant to his Plea Agreement, that if the Armed Career Criminal designation applied, he would be subjected to that enhancement; and (5) that any estimate of a sentence from any source, including his attorney, was a prediction which was not binding upon the Court. Consequently,, at the conclusion of that Hearing, the Court found that the petitioner's guilty pleas were intelligently and voluntarily tendered, and it accepted the petitioner's pleas.

Thereafter, the Probation Office prepared a Pre-sentence Report, recommending that the petitioner be subjected to an enhanced sentence as an Armed Career Criminal. Not surprisingly,

3

defense counsel immediately filed objections to that Report. Pertinent to this Motion, defense counsel argued that the petitioner should not have been subjected to such enhancement because he did not have a sufficient number of predicate convictions inasmuch as his prior multiple bank robbery and his drug conviction all had been treated as one single conviction by the Court which imposed those convictions. In its response, the Probation Office recommended that the petitioner's objection be overruled since the petitioner actually had received eight, separate convictions and sentences for his prior offenses, which sentences the Court merely allowed him to serve concurrently.

On November 13, 2001, the Court held a Factual Basis & Sentencing Hearing in this matter. At that point, the Court addressed counsel's several objections, denying most of them, including the one challenging the Armed Career Criminal designation. That is, the Court found that the petitioner, in fact, had received multiple sentences for multiple convictions for which he simply was allowed to serve a single, concurrent term of imprisonment.

Thereafter, defense counsel explained that he had not initially anticipated the sentencing enhancement, but upon his review of the Pre-Sentence Report he understood that the designation was applicable. Similarly, the petitioner addressed the Court, stating that although he "fe[lt] kind of weird about the acceptance of the advice," in any event, he "agree[d]" with that

advice and "appreciate[d]" the work counsel had done for him.

Next, the Court found that the petitioner's Total Offense Level was 31, his Criminal History Category was VI; and his corresponding Imprisonment Range was 188 to 236 months. Ultimately, the Court sentenced the petitioner to 120 months on the bank larceny conviction and to 68 months on the firearm conviction, for a total of 188 months imprisonment.

The petitioner did not directly appeal his convictions or sentences. Rather, after waiting several months, on June 6, 2002, the petitioner filed the instant Motion to Vacate, simply arguing that he was subjected to ineffective assistance of counsel in four respects. Specifically, the petitioner alleges that counsel was ineffective: (1) for having allowed the Court to impose the ACCA enhancement; (2) for having failed to properly calculate his Guidelines range; (3) for having allowed him to plead guilty under "a possible [sic] ambiguous statute that has no maximum penalty on its face . . . "; and (4) for having failed to properly investigate his criminal history in order to defeat the ACCA enhancement.

On October 21, 2002, the "Government's Response To Defendant's Motion To Vacate Pursuant To 28 U.S.C. §2255" was filed. Inasmuch as such response seeks a summary dismissal of the petitioner's Motion to Vacate, and it also includes as an attachment an Affidavit from the petitioner's former attorney,

5

the Court has construed the government's response as a <u>de facto</u> motion for summary judgment.

At any rate, the government contends that the petitioner's argument that counsel was ineffective for failing to challenge the ACCA enhancement is baseless in that it is grounded upon several mistaken assertions, including one that the petitioner somehow had agreed to a maximum ten year sentence under his Plea Agreement. Furthermore, the government contends that the evidence was more than sufficient for the Court to conclude that the petitioner was subject to the ACCA enhancement.

As for counsel's alleged failure to properly calculate the petitioner's Guidelines range, the government contends that the petitioner cannot possibly demonstrate any prejudice on this claim. First, both his Plea Agreement and the Court advised the petitioner that a sentence estimate from any source, including defense counsel, was a non-binding prediction. Second, the Plea Agreement pointed out that if applicable, the ACCA enhancement would be applied to the petitioner. Third, under the law, the Court had the authority to impose any sentence up to the statutory maximum terms for both offenses. Therefore, based upon the foregoing, and the fact that his sentence does not exceed the statutory maximum terms, the government strenuously argues that the petitioner cannot prevail on this claim.

With regard to the claim concerning a "possibly ambiguous"

statute, the government contends the petitioner again is mistaken. In particular, the government points out that in the absence of a specified statutory maximum term, the law implies a maximum term of life imprisonment.

Last, the government argues that the petitioner's claim that counsel failed to investigate his prior convictions is feckless in that counsel's affidavit establishes that counsel confirmed both the existence and the nature of such convictions. Therefore, in the absence of demonstrating any prejudice on any of his claims, the government contends that the petitioner's Motion must be <u>dismissed</u>.

On November 25, 2002, the petitioner's "Request For Summary Judgment In Opposition Of[sic] The Government's Response . . . " was filed. By that Request, the petitioner essentially focuses all of his efforts on challenging the sufficiency of the evidence which was used to support his ACCA enhancement. Among other matters, the petitioner reiterates his argument that the governent failed to present certified copies of his prior convictions, and he asserts that the Court erred in relying upon the information set forth in his Pre-sentence Report to establish its application.

However, after having carefully reviewed this matter, the Court finds that the petitioner has failed to demonstrate an entitlement to relief on any of his claims. Therefore, the

7

government's motion for summary judgment must be <u>granted</u>, and the petitioner's Motion to Vacate must be <u>dismissed</u>.

## II. **ANALYSIS**

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id</u>. at 689; <u>see also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.), <u>cert. denied</u>, 474 U.S. 865 (1985); <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065 (1984); <u>and</u> <u>Marzullo v. Maryland</u>, 561 F.2d 540 (4th Cir. 1977), <u>cert. denied</u>, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the

8

petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

More critically, a petitioner who alleges ineffective assistance of counsel following the entry of a guilty plea has an even <u>higher</u> burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath affirming satisfaction with counsel are deemed binding in the absence of

9

"clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977).

At the outset of its analysis, the Court notes that the petitioner has not asserted or even suggested that "but for" counsel's alleged errors, he would not have pled guilty and would have insisted upon a trial. Therefore, it is highly unlikely that the petitioner will be able to demonstrate any prejudice in connection with his claims. Moreover, the petitioner has failed to demonstrate that he received a sentence in excess of the statutory maximum terms which could have been imposed in the absence of the subject enhancement. Therefore, the petitioner's claims likely will not prevail.

1. **The petitioner's claim that counsel failed to adequately object to the subject enhancement must fail**.

Here, the petitioner alleges that counsel failed to adequately challenge his ACCA enhancement. However, to the extent that this claim is premised upon the petitioner's incorrect assertion that he somehow had agreed to a maximum term of ten years imprisonment, such claim is feckless. That is, the petitioner's Plea Agreement contains no such promise, nor has he presented any other evidence to support his assertion that he was entitled to a ten year sentence.

Similarly, to the extent that this claim is based upon the

petitioner's assertion that his prior bank robbery and drug convictions did not qualify as predicate offenses because he received a single term of imprisonment for them, he mistaken. To be sure, although the record reflects that the petitioner served a 70-month sentence for all of those convictions, that was merely because the Court ordered his eight separate sentences to run concurrently. Indeed, the record is clear that the petitioner was charged by separate Indictment for each offense; that he received a 60-month term on the drug conviction; and that he received seven separate 70-month terms for each bank robbery conviction. Therefore, the petitioner did have a sufficient number of qualifying convictions to subject him to the ACCA enhancement.

As for his complaint that counsel was ineffective for having failed to adequately object to the Court's imposition of the subject enhancement due to the absence of certified copies of those prior convictions, this assertion also is patently frivolous. Indeed, it is well settled that the determination of whether or not a defendant has three predicate convictions is properly determined under the preponderance of the evidence standard. <u>United States v. Sterling</u>, 283 F.3d 216, 219-20 (4th Cir), <u>cert. denied</u>, 536 U.S. 931 (2002). However, and contrary to the petitioner's argument, there is no requirement that the government tender certified copies of the defendant's judgments

of conviction in order to establish their existence.

Here, the U.S. Probation Office conducted an investigation and determined that the petitioner had sustained an ample number of predicate convictions to subject him to the ACCA enhancement. Thus, in the absence of any evidence to the contrary--which evidence simply does not exist, the Court was entitled to rely upon the Probation Office's Report to support its finding that the ACCA enhancement was applicable.

Furthermore, in the instant case, pertinent Court records reflect that, in addition to the fact that the petitioner actually did previously sustain the requisite number of qualifying convictions, those records further reflect that the undersigned is the jurist who presided over those cases and imposed the subject convictions and sentences. Thus, even in the absence of the Pre-Sentence Report, the undersigned, as the trier of fact, was entitled to take judicial notice of those prior convictions in the course of calculating the petitioner's sentence. See Fed.R.Evid. 201(b) (noting that a judicially noticeable fact is one which is not subject to reasonable dispute in that it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"). Therefore, this claim must fail.

### 2. The petitioner's claim that counsel failed to properly calculate his exposure is meritless.

As to this allegation, the petitioner, once again, is mis-

taken inasmuch as his claim is based upon his false assertion that he was promised a maximum of ten years imprisonment and/or that the government was legally required to produce certified copies of his prior convictions in order to prove that the ACCA enhancement was applicable. Thus, for the previously explained reasons, the petitioner cannot prevail here.

Likewise, the Court finds entirely unavailing the portion of this claim which is based upon the petitioner's argument that counsel was ineffective for his failure to have understood "the procedures of criminal law" well enough to ensure that he received concurrent, rather than consecutive, sentences as required under §5G1.2(c) of the Guidelines.

Indeed, as the government has accurately pointed out, §5G1.2(d) of the Guidelines expressly instructs that when, as here, a defendant is facing multiple convictions and the total punishment mandated by the Guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms to the extent necessary to achieve the total punishment. See also United States v. White, 238 F.3d 537, 543 (4th Cir.), cert. denied, 532 U.S. 1074 (2001) (applying U.S.S.G. §5G1.2(d)). Thus, since the petitioner faced a minimum of 188 months under the Guidelines, the Court was required to impose consecutive sentences and counsel was not deficient for choosing not to challenge this.

Moreover, while the petitioner is correct that his attorney conceded[2] that initially he was not aware that the petitioner was subject to the ACCA enhancement, such concession is of little import in light of the facts of this case. Rather, as the petitioner was advised by the Court at the time he entered his guilty pleas, sentencing estimates simply are not binding. Additionally, the petitioner's Plea Agreement put him on notice that he could be subjected to the ACCA enhancement if he met the criteria for that penalty.[3]

More critically, as the Court already has pointed out, the petitioner has not even hinted that had he been aware that the ACCA enhancement was applicable, he would have insisted upon a trial. Such silence speaks volumes for the petitioner's inability to demonstrate that he was prejudiced by counsel's performance in this regard.

### 3. The petitioner's claim that counsel allowed him to plead guilty under an ambiguous statute is baseless.

Here, the petitioner argues that counsel was ineffective for

---

[2] Ironically, while the petitioner has pointed out counsel's admission that he initially had failed to anticipate the application of the ACCA enhancement, he neglected to mention his own concession that despite counsel's initial oversight, he "agree[d]" with his lawyer's advice and he "appreciate[d] his work . . . ."

[3] The Court notes that the government submitted an affidavit from counsel, representing that after reviewing the Pre-Sentence Report, the petitioner admitted that his prior bank robberies had been committed on seven separate occasions—a fact evidenced by the Indictments from those cases. However, the petitioner denies having made that admission. Nevertheless, because the Court need not rely upon counsel's representation in order to resolve this claim, counsel's statement will be disregarded by the Court.

having allowed him to plead guilty under an "ambiguous" statute--
that is, a statute which does not state a maximum term of
imprisonment. However, this claim need not long detain the
Court.

To be sure, the Fourth Circuit previously has stated that in
the case of 18 U.S.C. §924(e) (the ACCA), the unstated statutory
maximum penalty is life imprisonment. United States v. Blue, 957
F.2d 106, 107 (4th Cir. 1992); accord United States v. Presley,
52 F.3d 64, 70 (4th Cir. 1995); and United States v. Blannon, 836
F.2d 843, 845 (4th Cir. 1988). Consequently, counsel was not
deficient for failing to challenge §924(e) as ambiguous on this
ground.

### 4. The petitioner's claim that counsel was in-effective for failing to adequately investigate his criminal background also must fail.

As to this last contention, the petitioner argues that
counsel failed him by not having sufficiently investigated the
circumstances of his prior convictions in order to defeat the
ACCA enhancement. Again, however, the petitioner is attempting
to support this claim by his erroneous assertion that the
government should have been forced to produce certified copies of
his prior convictions in order to support the ACCA enhancement.
Therefore, since the Court already has put this allegation to
rest, it is clear that the petitioner cannot prevail on this
contention.

## III. CONCLUSION

The petitioner has failed to demonstrate that counsel was deficient and/or, in any case, that he has suffered any prejudice as a result of counsel's performance. Accordingly, the government's motion for summary judgment must be <u>granted</u>; and the petitioner's Motion to Vacate must be <u>dismissed</u>.

## IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. That the government's motion for summary judgment is **GRANTED**;

2. That the petitioner's Request for Summary Judgment is **DENIED**; and

3. That the petitioner's Motion to Vacate is **DISMISSED**.

**SO ORDERED.**

Signed: May 20, 2005

Graham C. Mullen
Chief United States District Judge